UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID DOMINIQUE** | **CIVIL ACTION** |
| **VERSUS** | **NO:      07-03679** |
| **WOOD GROUP PRODUCTION SERVICES, INC.** | **SECTION: "L" (4)** |

## ORDER

Before the Court is a **Motion for Expedited Hearing (R. Doc. 10)**, filed by the Plaintiff, David Dominique ("Dominique"), seeking expedited consideration of his **Motion to Quash or Alternatively, Motion for Protective Order (R. Doc. 9)**. In Dominique's motion to quash, he seeks protection from subpoenas for records depositions issued by the Defendant, Wood Group Production Services, Inc. ("Wood Group"), which request his personal financial information. Dominique also filed a **Motion for Expedited Hearing (R. Doc. 10)**, requesting expedited consideration of his motion. The Court grants Dominique's request for expedited consideration of its motion to compel, and considers it below.

### I.     Background

This personal injury matter arises from the Court's diversity jurisdiction. (R. Doc. 1.) In this action, Dominique alleges that on or about July 19, 2006, he was employed by Shamrock Management as a "C Operator" and stationed on Alpha Platform 305 near Venice Louisiana. (R. Doc. 1.) He contends that while he was working as the operator and custodian on Alpha Platform, another employee of Wood Group attempted to move a soap tank to another area on the Alpha Platform. (R. Docs. 1, 9.) However, the employee dropped the tank onto Dominique's hand and

wrist or crushed Dominique's hand by lodging it between the moving tank and another fixed object. (R. Docs. 1, 9.) Wood Group purportedly owned and operated the crane. (R. Doc. 1.) Accordingly, Dominique brings suit against Wood Group under the doctrine of *res ipsa loquitur* and other negligence doctrines under Louisiana law. (R. Doc. 1.) Dominique claims that he has sustained permanent disabling injuries, and thus is entitled to past and future medical expenses, lost wages or lost earnings capacity, pain, suffering, and anguish, and other damages. (R. Doc. 1.)

In the motion, Dominique indicates that after surgeries, physical therapy, and other medical treatment, he is now at maximum medical improvement and has been permanently restricted from various work duties after a functional capacity evaluation. (R. Doc. 9.) He further indicates that he does not claim that he is totally disabled, but rather, that he has suffered a residual loss of earnings capacity. (R. Doc. 9.)

On April 12, 2008, counsel for the parties deposed Dominique. (R. Doc. 9-8, Ex. E.) During the deposition, he admitted that he suffered from financial problems before the incident and had obtained loans from Regions Bank and cash advances from Mr. Cash, Mr. Check, and Cash Cow. He specifically testified, "I was having a financial problem." (R. Doc. 9-8, Ex. E, p. 2.) According to Dominique, his financial troubles resulted in his exit from a lease-purchase agreement on his trailer home and the eventual foreclosure of the home, even despite the fact that his wife began to work. (R. Doc. 98-8, Ex. E.) Furthermore, he testified that he had various outstanding bills and loans, including to the bank, which was in the "negative" because of an overdraft deal. (R. Doc. 98-8, Ex. E, p. 3.) He also had taken out personal loans from family members. (R. Doc. 98-8, Ex. E, p. 3.) However, he was uncertain as to the exact amounts of his indebtedness because of the varying terms of his repayment agreements and accumulating interest on the debts.

On May 16, 2008, Wood Group propounded various "records only" subpoenas on the bank and check cashing or personal loan companies from which Dominique procured personal loans or cash advances. Specifically, Wood Group sought document production on June 5, 2008 from (1) Mr. Cash, (2) Mr. Check, (3) Regions Bank, and (4) Cash Cow. (R. Docs. 9-4, Ex. A; 9-5, Ex. B; 9-6, Ex. C; 9-7, Ex. D.) Wood Group requested any and all documents and correspondence pertaining to Dominique's financial transactions, loans, or advances with the four entities. (R. Docs. 9-4, Ex. A; 9-5, Ex. B; 9-6, Ex. C; 9-7, Ex. D.)

In the subject motion, Dominique moves to quash the subpoenas and for a protective order, preventing Wood Group from obtaining its requested discovery. Dominique contends that the subpoena requests are not reasonably calculated to lead to admissible evidence, are not probative to the claims and defenses in the case, and constitute harassing and embarrassing discovery tactics regarding Dominique's past financial affairs. Dominique indicates that while he did not receive a copy of the subpoenas themselves, he received the attached notices of the records depositions, and thus challenges the substance of the notices in the subject motion.

**II.  Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." The Rules specify that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc.*

*v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

### A.     Protective Order

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c).

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### B.     Subpoena Power

Rule 45 governs the issuance of subpoenas, and provides that on timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(c)(3). Additionally, parties or attorneys who issue and serve a subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Furthermore, the Rule 45(c)(1) provides that the "issuing court must enforce this duty and

impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees–on a party or attorney who fails to comply."

A motion to quash or modify a subpoena under Rule 45(c)(3) may ordinarily be made by the person to whom the subpoena is directed because only that person has standing to attack the subpoena. *Kiger v. Plaisance Dragline*, Civ. A. 04-3453, 2006 WL 3228289, at *1 (E.D. La. Nov. 2, 2006) (Roby, J.). However, a party, though not the person to whom a subpoena is directed and not in possession or control of the requested materials, does have standing if he or she has a personal right or privilege in respect to the subject matter of the subpoena or a sufficient interest in it. *Id*.

**III.   Analysis**

While Dominique is not the person to whom which the subpoena was directed, the Court finds that he has standing to challenge the subpoenas because he has a personal right regarding his financial information that is in the possession of Mr. Cash, Mr. Check, Cash Cow, and Regions Bank. Therefore, the Court considers Dominique's contentions below, in light of the governing authority.

Dominique requests the Court quash Wood Group's subpoenas or issue a protective order because the discovery of requested financial information will embarrass him and damage his reputation and his ability to obtaining future financing and loans with other institutions. Dominique also contends that there is no time limit as to when the requests apply, therefore, the requests are overbroad because they request financial information during his entire life.

He further asserts that the subpoenas request information irrelevant to the issues of the personal injury case and the loss of wage earning capacity due to his injury. He indicates that rather, the appropriate evidentiary considerations in this action include medical testimony, vocational rehabilitation testimony, and functional evaluation testimony, not financial information. Furthermore, he contends and that a personal injury suit does not open the door for an opposing party to discover all of an injured party's financial background.

5

While Wood Group did not file a response to this expedited motion, Dominique indicates that Wood Group seeks the requested information (1) to prove that Dominique suffered from financial difficulty prior to the incident at issue, (2) to impeach his testimony, and (3) for character evidence and to reduce his loss of earnings claim, if Dominique used the potential lawsuit damages as collateral when borrowing money from the check cashing companies and banks.

Dominique contends that each of Wood Group's proffered justifications for the requested discovery are unavailing.  First, Dominique notes that he himself testified that he suffered from financial problems, and therefore, the requested testimony is irrelevant to prove what he already admitted.  Second, he asserts that any impeachment value against him is limited because he testified that he is uncertain of the exact amount that he owes the various check cashing entities due to the accruing interest and the varying terms of his repayment agreements with those entities.  Third, Dominique does not make any claim in the subject action for his debts, but rather, merely requests to recover his loss of earnings capacity or wages because of the accident.  Furthermore, Dominique asserts that any attempt to impeach his credibility because of his personal financial struggles is impermissible under the Federal Rules of Evidence, rather, a party is only permitted to impeach one's character for truthfulness or untruthfulness, and such personal financial evidence is not probative of proving his truthfulness or untruthfulness.

After considering Dominique's contentions, the Court finds that the requested financial information is irrelevant to this case.  The detailed financial requests do not have a significant purpose in this personal injury lawsuit, but rather, will serve to annoy, embarrass, oppress, and pose an undue burden upon Dominique.  Furthermore, the Court finds that based on the information before it, any impeachment or character evidence purpose that the requested information may serve is tenuous at best, because Dominique testified that he was uncertain of the exact terms, conditions, and amounts owed to the check cashing entities and Regions Bank. The Court refuses to allow Wood Group to inquire into an irrelevant and sensitive area to "test" Dominique's truthfulness.  To do so

would permit parties to pursue unwieldy, tangential, and unrelated discovery, merely to inquire into a witness's credibility. Simply put, following Wood Group's logic would permit parties to inquire into a party's financial circumstances in every case.

Here, Dominique already testified under oath before the parties that he suffered from financial difficulties. Invasively scrutinizing the specific details of the financial struggles in his life has no substantial purpose in this personal injury litigation, which requires proof of the extent, cause, and impact of Dominique's physical injury, and not his financial situation. The Court also finds that Wood Group's subpoena requests are overbroad because they seek "any" and "all" documents and correspondence made regarding or "related in any way" to Dominique, with no limit in time. (R. Docs. 9-4, Ex. A; 9-5, Ex. B; 9-6, Ex. C; 9-7, Ex. D.) Therefore, Wood Group's requests are virtually boundless because they encompass even periods far before the accident, which again, have no bearing on this personal injury suit regarding Wood Group's alleged negligence and Dominique's lost earnings capacity. Consequently, Wood Group's subpoena requests are not calculated to lead to the discovery of admissible evidence, as the requests are irrelevant, and in fact, are harassing and embarrassing.

Based on these considerations alone, the Court finds that Wood Group's request for Dominique's financial information subjects Dominique to annoyance, embarrassment, oppression, and undue burden to warrant the Court's issuance of a protective order, shielding Dominique from these discovery inquiries. The Court further quashes Wood Group's subpoenas to (1) Mr. Cash, (2) Mr. Check, (3) Regions Bank, and (4) Cash Cow because they seek this irrelevant information. The Court refuses to permit Wood Group to pry into irrelevant and sensitive areas of Dominique's private financial struggles.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that **Motion for Expedited Hearing (R. Doc. 10)** is **GRANTED**.

**IT IS FURTHER ORDERED** that **Motion to Quash or Alternatively, Motion for Protective Order (R. Doc. 9)** is **GRANTED**.

New Orleans, Louisiana, this 3rd day of June 2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**